## UNITED STATES DISTRICT COURT
## DISTRICT OF MARYLAND

TRACY L. SKINNER,

    Plaintiff,

    v.

LORI MANNINO,

    Defendant.

Civil Action No. TDC-20-1996

## MEMORANDUM OPINION

Plaintiff Tracy L. Skinner, an inmate at the North Branch Correctional Institution ("NBCI") in Cumberland, Maryland, has filed this self-represented civil action pursuant to 42 U.S.C. §1983 alleging that Defendant Lori Mannino, the Chief of the Community Forensic Aftercare Program of the Maryland Department of Health, acted with deliberate indifference to his mental health needs, in violation of the Eighth and Fourteenth Amendments to the United States Constitution. Pending before the Court is Mannino's Motion to Dismiss or, in the Alternative, Motion for Summary Judgment.  Skinner has filed a memorandum in opposition to the Motion with accompanying exhibits.  Upon consideration of the submitted materials, the Court finds that no hearing is necessary. *See* D. Md. Local R. 105.6.  For the reasons set forth below, Mannino's Motion to Dismiss will be DENIED.

## BACKGROUND

Skinner has pending before this Court a related civil action, *Skinner v. Liller*, No. TDC-17-3262 ("*Skinner I*"), in which he has alleged that various correctional officers and mental health providers have violated his constitutional rights by maintaining him in administrative segregation

for a prolonged period of time and, as a result of the limitations on mental health care available to inmates on such segregation, depriving him of constitutionally adequate mental health care. *See Skinner v. Moyer*, No. TDC-17-3262, 2020 WL 1065740 (D. Md. Mar. 4, 2020); *Skinner v. Liller*, No. TDC-17-3262, 2021 WL 1062003 (D. Md. Mar. 19, 2021). In the present case, he alleges that Mannino is also liable for the alleged deprivation of mental health care.

Skinner is serving a 30-year sentence imposed in 2003 for second-degree murder. *State v. Skinner*, No. 20-K-03-7732 (Cir. Ct. Talbot Cnty. Nov. 11, 2003). On December 10, 2014, in the Circuit Court for Howard County, Maryland, Skinner was found Guilty but Not Criminally Responsible on a charge of Assault First Degree. On May 28, 2015, the Circuit Court ruled that rather than commit Skinner to a psychiatric hospital, he would be "released" so that he could remain at NBCI or another state prison to complete his criminal sentence while receiving mental health treatment. Compl. ¶ 12, ECF No. 1; Circuit Court Findings and Conclusions at 1, Opp'n Mot. Dismiss Ex. 1, ECF No. 12-1. The Court issued an Order of Release with Conditions under which Skinner was required to comply with various conditions, including following the rules and treatment recommendations of his mental healthcare providers, and the Maryland Department of Health, Community Forensic Aftercare Program ("CFAP"), would monitor his compliance with that mental health treatment and the terms of the Order of Release. Specifically, the Order of Release provided that "[i]f at any time during the term of his release with conditions, Tracy Skinner does not fulfill each and every condition of this Order, or if it should be determined by CFAP in consultation with his [Division of Correction] mental health provider(s) that he can no longer be successfully treated in the correctional setting, CFAP shall immediately notify the Court and the appropriate State's Attorney, and Tracy Skinner may be committed . . . for institutional inpatient care or treatment." Order of Release ¶ 17, Opp'n Mot. Dismiss Ex. 1, ECF No. 12-1.

In the Complaint, Skinner alleges that Mannino was the clinical social worker designated by CFAP to monitor Skinner pursuant to the Order of Release, including that she was "authorized to report to the court if Plaintiff can no longer be treated successfully in the correctional setting so he may be committed to the Department of Health for inpatient care and treatment." Compl. ¶ 7. Skinner alleges that Mannino was aware of his serious mental health needs and that he was being denied proper mental health treatment at NBCI. Specifically, he asserts that he notified Mannino on numerous occasions that the NBCI Special Needs Unit ("SNU") Treatment Program lacked adequate resources to treat him. Skinner further alleges that on March 28, 2018, he told Mannino that the treatment he received was "cruel, harsh, and tantamount to tortur[ous] treatment." *Id.* ¶ 22. He asserts that Mannino was aware that Skinner was being subjected to long-term segregation, that because of his long-term segregation he was not receiving treatment and programming, and that as a result he was suffering "overwhelming symptoms of his serious mental illness." *Id.* ¶ 23. Skinner also asserts that Mannino was aware that persons with serious mental illnesses should not be subjected to long-term segregation. Nevertheless, Mannino did not notify the Circuit Court, as required by the Order of Release, that in light of his segregation status, Skinner could no longer be successfully treated in a correctional setting and should be committed to a state psychiatric facility in order to receive proper care. Skinner is seeking monetary damages and declaratory relief.

## DISCUSSION

In the Motion, Mannino seeks dismissal under Federal Rule of Civil Procedure 12(b)(6) or summary judgment under Rule 56 on the grounds that (1) the claims against her are barred by state immunity under the Eleventh Amendment to the United States Constitution; (2) the Complaint fails to state a plausible claim for a violation of the Eighth or Fourteenth Amendments; and (3) she is entitled to qualified immunity.

## I.    Legal Standards

To defeat a motion to dismiss under Rule 12(b)(6), the complaint must allege enough facts to state a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is plausible when the facts pleaded allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Legal conclusions or conclusory statements do not suffice. *Id.* A court must examine the complaint as a whole, consider the factual allegations in the complaint as true, and construe the factual allegations in the light most favorable to the plaintiff. *Albright v. Oliver*, 510 U.S. 266, 268 (1994); *Lambeth v. Bd. of Comm'rs of Davidson Cty.*, 407 F.3d 266, 268 (4th Cir. 2005). A self-represented party's complaint must be construed liberally. *Erickson v. Pardus,* 551 U.S. 89, 94 (2007). However, "liberal construction does not mean overlooking the pleading requirements under the Federal Rules of Civil Procedure." *Bing v. Brivo Sys., LLC*, 959 F.3d 605, 618 (4th Cir. 2020).

Ordinarily, when deciding a motion to dismiss under Rule 12(b)(6), the Court considers only the complaint and any attached documents "integral to the complaint." *Sec'y of State for Defence v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007). Rule 12(d) requires courts to treat such a motion as a motion for summary judgment where matters outside the pleadings are considered and not excluded. Fed. R. Civ. P. 12(d). Before converting a motion to dismiss to one for summary judgment, courts must give the nonmoving party "a reasonable opportunity to present all the material that is pertinent to the motion." *Id.* "Reasonable opportunity" has two requirements: (1) the nonmoving party must have some notice that the court is treating the Rule 12(b)(6) motion as a motion for summary judgment, and (2) the nonmoving party "must be afforded a reasonable opportunity for discovery" to obtain information essential to oppose the motion. *Gay v. Wall*, 761 F.2d 175, 177 (4th Cir. 1985) (citation omitted).

4

Here, the notice requirement has been satisfied by the title of Mannino's Motion. To show that a reasonable opportunity for discovery has not been afforded, the nonmoving party must file an affidavit or declaration under Rule 56(d), or another filing, explaining why "for specified reasons, it cannot present facts essential to justify its opposition." Fed. R. Civ. P. 56(d). *See Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 245 (4th Cir. 2002). Where both Mannino and Skinner have attached exhibits to their briefs and neither objects to the documents or seeks discovery, the Court will construe Mannino's Motion as a Motion for Summary Judgment for purposes of the arguments requiring consideration of the attached exhibits.

Under Rule 56(a), the Court grants summary judgment if the moving party demonstrates that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In assessing the Motion, the Court views the facts in the light most favorable to the nonmoving party, with all justifiable inferences drawn in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The Court may rely only on facts supported in the record, not simply assertions in the pleadings. *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248. A dispute of material fact is "genuine" only if sufficient evidence favoring the nonmoving party exists for the trier of fact to return a verdict for that party. *Id.* at 248-49.

## II.   Eleventh Amendment

In the Complaint, Skinner does not specify whether he has sued Mannino in her official capacity or her individual capacity. To the extent that he asserts claims against her in her official capacity, they are barred by the Eleventh Amendment, which immunizes state agencies from

5

citizen suits for damages in federal court. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984). Mannino is a Maryland state employee. *See* Md. Code Ann., State Gov't § 12-101(a) (West 2021) (defining "state personnel"). Suits against state officials in their official capacities are the equivalent of suits against the state itself. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). Accordingly, any claims against Mannino in her official capacity are barred by the Eleventh Amendment and will be dismissed.

Although Mannino argues that all claims asserted in the Complaint are necessarily claims against her in her official capacity, the Court disagrees. Viewing the allegations in the light most favorable to Skinner, as the Court must at this stage, the Court construes the Complaint as advancing claims against Mannino in her individual capacity, which are permitted. The Motion will therefore be denied as to the claim of immunity from such claims.

**III.     Eighth and Fourteenth Amendments**

Mannino also argues that the Complaint fails to allege sufficient facts to support an Eighth or Fourteenth Amendment claim, and that upon consideration of the submitted evidence, she is entitled to summary judgment. As the Court has already found in *Skinner I*, Skinner has a viable Eighth Amendment claim arising from alleged deliberate indifference to his mental health care needs while he was in administrative segregation for approximately two years. *See Skinner I*, 2020 WL 1065740, at *9-10; *Skinner I*, 2021 WL 1062003, at *7. As discussed in *Skinner I*, an Eighth Amendment claim based on inadequate mental health care requires a showing that the defendant acted with deliberate indifference to a serious mental health need. *See Skinner I*, 2021 WL 1062003, at *8 (stating that "[a] prison official violates the Eighth Amendment when the official shows deliberate indifference to serious medical needs of prisoners" and describing the elements

6

of this standard).  The issue is whether Skinner has plausibly alleged that Mannino, in addition to the Defendants in *Skinner I*, acted with such deliberate indifference.

Here, Skinner has alleged that Mannino, who was assigned by CFAP to monitor his mental health treatment was aware of the facts that he was in long-term segregation and that, as a result, he was not receiving the kind of mental health treatment and programming available to inmates outside of segregation and he was suffering from "overwhelming" mental health symptoms. Compl. ¶ 23.  Although the allegations are limited, in light of the Court's findings in *Skinner I*, the Court concludes that viewed in the light most favorable to Skinner, the allegations in the Complaint are sufficient to show that Skinner had an objectively serious mental health condition and that Mannino was subjectively aware of a serious risk to his well-being if no action was taken.  Where Skinner has also alleged that Mannino, with such knowledge, failed to report the deficient mental health care to the Circuit Court, which could have resulted in a determination that Skinner needed to be transferred to a psychiatric facility, he has stated a plausible claim of deliberate indifference.

Mannino argues that she cannot be held liable for an Eighth Amendment violation because she did not work for the Maryland Division of Correction, her role was limited to overseeing Skinner's compliance with the Order of Release, and that she "could not dictate how to handle Mr. Skinner's behavior or his clinical medical or mental health treatment."  Mot. Dismiss at 5-6, ECF No. 8.  Mannino is likely correct that she had no ability to order Skinner released from administrative segregation to the general population or to dictate his specific mental health treatment.  However, her role as the CFAP monitor was not limited to reporting non-compliance by Skinner with the requirements of his mental health treatment.  As Skinner has alleged, and as the Order of Release confirms, the Circuit Court had directed that if Mannino determined that Skinner could "no longer be successfully treated in the correctional setting," she was required to

"immediately notify the Court" so that he could be committed "for institutional inpatient care or treatment." Order of Release ¶ 17. Just as a correctional officer may be found deliberately indifferent for failing to take steps to arrange for appropriate medical care when in a position to do so, someone in Mannino's position, with the authority to take action that would be reasonably calculated to get an inmate out of a setting with inadequate mental health care and into a different setting with adequate mental health care, could be subject to liability if she acted with deliberate indifference. *See, e.g., Iko v. Shreve*, 535 F.3d 225, 243 (4th Cir. 2008). Skinner has therefore stated a plausible Eighth Amendment claim.

As for the Fourteenth Amendment, which applies to claims of deliberate indifference to medical or mental health needs for a detainee not serving a prison sentence, where Skinner was arguably at NBCI in a dual status as an inmate serving a prison sentence and as a civil detainee committed to that facility for purposes of mental health treatment, the Court will allow both claims to proceed. *See Youngberg v. Romeo*, 457 U.S. 307, 315 (1982) (stating, in the context of involuntary civil commitment, that "the right to personal security constitutes a 'historic liberty interest' protected substantively by the Due Process Clause" and "that right is not extinguished by lawful confinement" (quoting *Ingraham v. Wright*, 430 U.S. 651, 673 (1977))).

Although Mannino invites the Court to consider, on the issue of summary judgment, the "documentation attached to this motion," which purportedly provides proof that Mannino had no responsibilities relating to Skinner's mental health treatment, those attachments consist only of a docket sheets and Skinner's Complaint and do not refute Skinner's claims. Mot. Dismiss at 10. In contrast, Skinner's attached exhibits, while not conclusive, provide additional support for his allegations, including documentation that his attorney told him that if he was not receiving satisfactory mental health treatment, he should "contact CFAP and report it immediately," Opp'n

Mot. Dismiss Ex. 2 at 1, ECF No. 12-2; that Skinner wrote to Mannino directly to complain about his mental health treatment; that once Skinner was in long-term segregation, CFAP personnel repeatedly submitted reports stating that Skinner did not have "access to the programming he should have" and that someone with his mental health issues "should not be in long term segregation," but that Skinner would not be moved out because of a lack of housing options within NBCI, Opp'n Mot. Dismiss Ex. 3 at 10, ECF No. 12-3; and that Mannino was a party to various entries on correspondence logs discussing Skinner's needs.

Where Skinner has alleged sufficient facts to support a plausible claim of deliberate indifference to his serious mental health needs, the Motion will be denied as to the Eighth Amendment and Fourteenth Amendment claims.

## IV.    Qualified Immunity

Mannino further argues that regardless of whether Skinner has stated valid claims, she is entitled to the defense of qualified immunity. Qualified immunity shields government officials performing discretionary functions "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *Henry v. Purnell*, 501 F.3d 374, 376–77 (4th Cir. 2007). When qualified immunity is asserted, the court must consider two questions: (1) whether the facts, viewed in the light most favorable to the plaintiff, show that the official violated a constitutional right; and (2) "whether the right was clearly established," that is, "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier v. Katz*, 533 U.S. 194, 201 (2001); *Henry*, 501 F.3d at 377. For qualified immunity to apply, only one of the questions has to be resolved in favor of the defendant. *See Henry*, 501 F.3d at 377. Courts may address the questions in any order. *Pearson v. Callahan*, 555

9

U.S. 223, 236 (2009). In determining if a right is "clearly established," the Court considers whether "the contours of the right are sufficiently clear that a reasonable officer would understand that what he is doing violates that right" and was thus "on notice" that the conduct violated established law. *E.W. by and through T.W. v. Dolgos*, 884 F.3d 172, 185 (4th Cir. 2018). Even if no court has found that the specific conduct in question violated an individual's rights, "if a general constitutional rule already identified in the decisional law applies with obvious clarity to the specific conduct in question," the right may be clearly established. *Id.*

Here, Mannino argues only that the allegations do not support a plausible claim of a constitutional violation and offers no specific argument as to why the right at issue was not clearly established. The Court has already found that Skinner has stated a plausible claim under the Eighth and Fourteenth Amendments for deliberate indifference to his serious mental health need. *See supra* part III. Further, at the time of these events, it was clearly established in controlling case law that deliberate indifference to medical or mental health needs of an inmate violates the inmate's constitutional rights. *See Iko*, 535 F.3d at 243 & n.12 (affirming the denial of qualified immunity on a claim that a correctional officer was deliberately indifferent to an inmate's serious medical needs when he did not summon medical care when the plaintiff collapsed); *DePaola v. Clarke*, 884 F.3d 481, 486-87 (4th Cir. 2018) (holding that deliberate indifference to serious mental health needs constitutes an Eighth Amendment violation because "[c]ourts treat an inmate's mental health claims just as seriously as any physical health claims" and finding that an inmate stated such a claim when he alleged that he repeatedly sought "help" for mental health issues at his prison but was repeatedly denied treatment). Accordingly, based on the record at this point in the case, the Court will deny the Motion as to Mannino's qualified immunity argument.

## CONCLUSION

For the foregoing reasons, Mannino's Motion to Dismiss will be DENIED. A separate

Order shall issue.

Date:  January 26, 2022

THEODORE D. CHUANG
United States District Judge

11